[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] COURT ORDER REGARDING DEFENDANT'S MOTION TO RE-OPEN AND CORRECT THE JUDGMENT OF JULY 11, 2001, DATED JULY 24, 2001; AND PLAINTIFF'S MOTION FOR ARTICULATION POST-JUDGMENT DATED AUGUST 27, 2001; AND PLAINTIFF'S MOTION FOR ORDER POST-JUDGMENT DATED AUGUST 27, 2001
 A.
Paragraph 1 of the defendant's motion alleges as follows:
 1. On page five of the Judgment, the court makes reference to defendant Husband's home in Wilmington, Vermont. The Judgment is silent as to the final disposition of said realty. The Vermont realty should be awarded to the defendant Husband.
Paragraph 1 of the plaintiff's Motion for Articulation alleges as follows:
 2. The Memorandum of Decision is silent as to the disposition of the defendant's interest in Glastonbury Health Care Center and the Vermont family residence.
 ORDER
The court orders that the defendant quit claim to the plaintiff by October 5, 2001 all of his right, title and interest in his property located in Wilmington, Vermont. Counsel for the plaintiff is to prepare the quit claim deed and forward it to counsel for the defendant to be executed by the defendant and returned to counsel for the plaintiff.
 B.
Paragraph 2 of the defendant's motion alleges as follows:
 2. The court in its order at page 46 number 15, orders that plaintiff wife be awarded the Margaret M. Errichetti Qualified Personal Residence Trust (The home where plaintiff resides). The Judgment is silent as to responsibility for the mortgage and other liens CT Page 12428 and/or expenses associated with the home. The Judgment should order that defendant husband be held harmless by the plaintiff Wife with respect to said mortgage and other expenses associated with said Trust.
Paragraph 3 of the plaintiff's Motion for Articulation alleges as follows:
3. The Memorandum of Decision is silent as to the $53,382 loan secured by a mortgage on the family home as Charcoal Road, Middlebury.
The Margaret M. Errichetti Qualified Personal Residence Trust was introduced as defendant's Exhibit #25.
Article III Section 3A of the Trust provides as follows:
 Section 3. Settlor's Retained Interest During Trust Term. A. During the Trust Term, the Trustees shall hold the Trust property for the Settlor's exclusive personal use and benefit. The Trustees shall permit: the Settlor to use such property as her personal residence without rent or other charge, and the Trustees shall maintain such property from the Trust funds, including any rental income received by the Trustees. To the extent that the Trustees incur expenses for the maintenance of the Trust property in excess of the Trust's cash assets, the Trustees shall notify the Settlor who may pay such expenses directly, without any right to reimbursement from the Trust.
Article III Section 8 of the Trust provides as follows:
 Section 8. Obligation for Mortgage Debt. In the event that the principal of this Trust, consisting of the Personal Residence of the Settlor, is security for a debt of the Settlor at the time of execution of this Trust Indenture or at any time thereafter, the Settlor shall have sole and absolute responsibility and obligation to pay the interest and principal thereof, as set forth in any written evidence of such debt, without default. The Settlor shall indemnify and hold the Trustees harmless with respect to any claim for payment of interest, principal penalties, or other sums by any person holding a secured interest in the principal of this Trust consisting of the Personal CT Page 12429 Residence of the Settlor.
 ORDER
In accordance with Article III Section 8, the Settlor (plaintiff) has the sole and absolute responsibility and obligation to pay the interest and principal on the mortgage. In accordance with Article III Section 8 of the Trust, the trustee is responsible for maintaining the property from the trust funds without any charge to the Settlor. Any expenses for maintenance that the Settlor elects to pay are without reimbursement from the trust. The court orders compliance with the above trust provisions.
 C.
Paragraph 3 of the defendant's motion alleges as follows:
 3. On page 39 of the Judgment, the court ascribes income to the plaintiff Wife, by way of Glastonbury Health Care, Inc., in the amount of $10,000. On page 15 through 23 of the Judgment (especially at page 22) the Court finds that defendant Husband has a 2% interest in the Glastonbury facility, budgeted for a distribution of income amounting to $10,000. Although it appears that the Court intends to transfer Husband's 2% interest in the Glastonbury facility to Wife, the Judgment is silent as to any such transfer.
Paragraph 1 of the plaintiff's Motion for Articulation alleges as follows:
1. The Memorandum of Decision is silent as to the disposition of the defendant's interest in Glastonbury Health Care Center and the Vermont family residence.
 ORDER
All of the defendant's 2% interest in Glastonbury Health Care, Inc. is awarded to the plaintiff. All documents necessary to complete the transfer are to be prepared by counsel to the plaintiff and forwarded to counsel for the defendant and are to be executed by the defendant and returned to counsel for the plaintiff by October 5, 2001.
 D.
Paragraph 4 of the defendant's motion alleges as follows:
 4. The Judgment on pages 47 through 59, in orders CT Page 12430 number 18 through 25, has awarded to the plaintiff Wife the defendant Husband's interest in various developments. Inasmuch as transfer of these assets will take a reasonable period of time, the defendant Husband must know how to handle any distribution which might be made to him post-Judgment, but prior to the legal transfer of his interests to the Wife. Defendant Husband requests an order allowing him to forward to the plaintiff Wife any such payments made to him as alimony for the plaintiff Wife. In addition, certain of the developments pay only quarterly and in arrears. It is defendant Husband's position that any and all payments received by him which are for the period (or quarter) prior to July 11, 2001 (the date of Judgment) should be retained by him.
The issues raised in this paragraph are also raised in the plaintiff's Motion for Order Post-Judgment dated August 27, 2001. All counsel are in agreement that evidence will be presented to the court regarding the tax ramifications and the manner that the distributions received by the defendant are to be handled. All counsel are also in agreement that orders should be entered at this time regarding the remaining issues raised by the defendant's Motion to Reopen and Correct and the plaintiff's Motion for Articulation.
 E.
Paragraph 5 of the defendant's motion alleges as follows:
 5. The defendant Husband is both the owner and beneficiary of an annuity for each of the three minor children. As was argued by Attorney Snearly (Guardian Ad Litem) in her brief, estate planning would be better served if he were not both owner and beneficiary. The defendant Husband should remain the owner of the three annuities, with instruction from the Court as to who should be the beneficiary of each annuity.
Paragraph 4 of the plaintiff's Motion for Articulation alleges as follows:
 4. The Memorandum of decision is silent as to the ownership and beneficiary designation of the annuities established for each of the parties' three minor children.
CT Page 12431
 ORDER
Attached to this memorandum is a copy of a stipulation entered into between the parties dated August 27, 2001 which the court has approved of that addresses the issues raised in paragraph 5 of the defendant's motion.
 F.
Paragraph 2 of the plaintiff's Motion for Articulation alleges as follows:
 2. The Memorandum of Decision is silent as to the approximate $200,000.00 loan from the defendant to his father, John Errichetti, which was to be paid in full by the defendant's mother, Janet Errichetti, at the time of the sale of the real property owned by Phoenix Land, LLC.
On pages 32 and 33 of the Memorandum of Decision dated July 11, 2001, the court allocated the sale price in Phoenix Land, LLC in part by payment to the defendant of $300,000 of capital he invested. The court further found that the defendant owned a 3/7 interest in Phoenix Land, LLC for which he would receive 3/7 of $2,400,000 or approximately $1,028,571 plus the $300,000 return of capital for a total of approximately $1,328,571 and the court therefore found that the defendant's interest in Phoenix Land, LLC had a fair market value of $1,328,571. The $300,000 return of capital consisted of approximately $100,000 that the defendant contributed toward the acquisition of Phoenix Land, LLC plus $200,000 that was owed to him from his parents. The court found credible the defendant's testimony on November 8, 2000 when he testified in part as follows:
 "That's correct. Something just occurred to me: there is $200,000 that is owed to me from my father, or parents, that I have been conceptually carrying with the Phoenix Land asset. So when — so I have to modify my answer with regard to Phoenix. It's really about $300,00 I have invested in that, not $100,000."
In paragraph 25 of the orders entered in the Memorandum of Decision dated July 11, 2001, this court ordered as follows:
 "The court assigns to the plaintiff all of the defendant's interest in the Phoenix Land, LLC."
 ORDER CT Page 12432
The $200,000 loan from the defendant to his parents, as well as the $100,000 invested by the defendant in Phoenix Land, LLC are all assets assigned to the plaintiff.
 G.
PLAINTIFF'S MOTION FOR ORDER POST-JUDGMENT DATED AUGUST 27, 2001.
 ORDER
The defendant agreed in court on August 27, 2001 to transmit to the plaintiff any and all information concerning all assets awarded to the plaintiff pursuant to the judgment. The court enters no orders regarding this motion.
AXELROD, J.
[EDITORS' NOTE: THE STIPULATED AGREEMENT IS ELECTRONICALLY NON-TRANSFERRABLE.]